UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**ESTATE OF TEION YASIN COOPER**
**BY SPECIAL ADMINISTRATOR JULIUS ANDRIUSIS,**

**BARBARA SHAREE THOMAS,**

**M. T. (a minor)**,

    Plaintiffs,

    v.                            Case No.:    2:25-cv-530

**THOMAS DURAND,**

**LEON MARTIN,** and

**MILWAUKEE COUNTY,**

    Defendants.

---

## COMPLAINT

---

**NOW COMES** the above-named plaintiffs Estate of Teion Yasin Cooper (hereinafter "**The Estate**"), through its nominated Special Administrator, Julius Andriusis, Barbara Sharee Thomas in her own right ("**BARBARA**"), and **M. T.,** ("**M. T.**"), a minor child by her mother, Barbara Sharee Thomas (her legal guardian), by their attorneys, Andriusis Law Firm, LLC, and allege and show to the Court as follows:

### JURISDICTION

1.    This Honorable Court has original federal jurisdiction based an important federal question pursuant to 28 U.S.C. §1331 regarding **The Estate**'s §1983 claims.

2. This Court has supplemental jurisdiction over the Wisconsin state law claims pursuant to 28 U.S.C. §1367 because said claims arise out of the same controversy – the reckless high speed vehicle pursuit that directly resulted in the death of Teion Yasin Cooper – as **The Estate**'s §1983 claims, which are within this Court's original jurisdiction under Article III of the United States Constitution.

## VENUE

3. Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b) because all incidents, events, occurrences and/or omissions giving rise to these claims occurred in the Eastern District of Wisconsin. Moreover all parties are situated within the Eastern District of Wisconsin.

4. Notice of the instant tort claim was provided to Milwaukee County hereinafter "**the County**") by service of a Notice of Claim and Injury on September 2, 2022, and thereafter a more detailed Amended Notice of Injury served upon George L. Christenson, Milwaukee County Clerk, on October 6, 2023. That more than 120 days have passed and **The Estate** has received no notification of the denial or acceptance of responsibility for the claim from **the County**.

5. The Plaintiffs allege that the wrongful acts alleged herein were carried out pursuant to one or more customs or policies of the **County** as more fully set forth below.

## PARTIES

6. That Julius Andriusis (hereinafter "**Andriusis**") is the Special Administrator for **the Estate** (*See*, Milwaukee County Case Number 2024PR000631 *In the Estate of Teion Yasin Cooper*) and brings this action on behalf of the **Estate.** That **Andriusis** maintains a law practice at 985 West Oklahoma Avenue, Milwaukee, WI 53215.

7. That **BARBARA** is a plaintiff in her own right, having been herself injured in the instant collision. That **BARBARA** is an adult who resides at 6658 North Bourbon Street #7, Milwaukee, WI 53224.

8. That **M. T.** is the minor child of the decedent Teion Yasin Cooper and **BARBARA**, who brings this action under their daughter's name as the legal guardian of their minor child **M. T.**, who resides with **BARBARA**.

9. At all times relevant to this action, Thomas Durand (hereinafter "**DURAND**") was acting under the color of state law and within the scope of his employment with **the County**, as a Deputy Sheriff employed by **the County.**

10. At all times relevant to this action, Leon Martin (hereinafter "**MARTIN**") was acting under the color of state law and within the scope of his employment with **the County**, as a Deputy Sheriff employed by **the County**.

11. **The County** is a municipal corporation, duly incorporated under the laws of the State of Wisconsin, and was at all relevant times, through the Milwaukee County Sheriff's Department, the employer and principal of **DURAND** and **MARTIN.**

12. That **DURAND** and **MARTIN** are, on information and belief, adult residents of Milwaukee County, State of Wisconsin. That at all times relevant to this lawsuit, they were employed as Deputy Sheriffs for **the County**, acting under color of state law within the meaning of 42 U.S.C. §1983, and within the scope of their employment as that term is used in Wis. Stats. §895.46.

13. That **the County** is a Wisconsin municipality with the capacity to sue and be sued in this Court. That **the County** is liable for the unlawful acts of the individual Defendants not

3

only because they were acting within the scope of their employment pursuant to Sec. 895.46, Wis. Stats., but for the reasons more fully set forth below involving the wholesale failure of **the County** to properly train and supervise its employees.

## FACTUAL BACKGROUND

14. On Tuesday evening, May 24, 2022, at 6:06 p.m. (or "18:06:00" as hereinafter expressed in 24 hour 'military' times as shown on the dash cam video referenced below), **DURAND** and **MARTIN** were on duty in the same squad car and **DURAND** – with the observational assistance including navigation, lookout and encouragement of **MARTIN** – was operating the sheriff's deputy squad car on behalf of **the County** while acting in their capacities as deputy sheriffs and were driving southbound on North Sherman Boulevard as they approached West Hope Avenue in Milwaukee County.

15. Upon approaching the intersection, **DURAND** and **MARTIN** spotted a white Infiniti they later determined was owned and operated by Javon L. Alexander ("**ALEXANDER**") heading northbound on North Sherman Boulevard towards the same intersection. **DURAND** and **MARTIN** observed that **ALEXANDER** moved to the far right "distress" lane as he approached the intersection and the light turned green.

16. Instead of turning right as one might reasonably expect, **ALEXANDER** proceeded straight northbound through the intersection and effortlessly merged with traffic in the northbound lanes of North Sherman Boulevard without endangering anyone's safety. This is a routine albeit inappropriate time saving procedure that takes place literally every day within Milwaukee County on innumerable occasions and – as is evident from a review of the deputies'

dash cam video – presented absolutely no danger to the public whatsoever and at worst, warranted the issuance of a municipal citation for unsafe lane deviation or the like.

17. That in response thereto, in violation of his training and policies but in accord with prior undisciplined behavior by fellow deputy sheriffs, **DURAND** mate the fateful decision to institute a police stop by making a U-turn and proceeding northbound on Sherman Boulevard with lights and sirens engaged.

18. That having noticed the Sheriff's squad car with emergency lights pursuing him, **ALEXANDER** (an African American man who is familiar with the sordid history of interactions by and between African American men and local law enforcement in Milwaukee County) accelerated his car northbound on North Sherman Boulevard in an attempt to flee the officers pursuing him, ultimately reaching speeds approaching or exceeding **100 M.P.H.** That despite their training and policies, but in accord with prior undisciplined behavior by fellow deputy sheriffs, **DURAND** and **MARTIN** engaged in a high speed pursuit of **ALEXANDER**.

19. At 18:07:12 on May 24, 2022, **DURAND** and **MARTIN** were traveling at 12 M.P.H. after completing their U-turn. At 18:07:20, just eight seconds later, their squad car was now traveling **64 M.P.H.** as it approached West Marion Street on North Sherman Boulevard. At 18:07:25, as it flew through the intersection of West Congress Street and North Sherman Boulevard, the squad car was now traveling **68 M.P.H**. By 18:07:32, the squad car was now approaching The Atonement Church at 4500 North Sherman Boulevard and is now traveling **86 M.P.H.**, prompting the fleeing **ALEXANDER** to travel *even faster* to continue to elude them.

20. In effect, this high speed pursuit of a municipal traffic violator in a densely populated urban center during the evening rush hour on a (Tuesday) school night past churches

5

and schools, in **30 M.P.H.** zones reduced to **20 M.P.H.** in school zones, was of such a reckless nature that this high speed vehicle pursuit was the legal equivalent of **DURAND** and **MARTIN** firing a loaded gun into a crowd with the inevitable consequence of harm coming to innocent bystanders such as **M. T.**, Barbara S. Thomas and Teion Yasin Cooper which inevitable and foreseeable harm in fact occurred, forever destroying this family.

21. At 18:07:37, the squad continued its unwarranted and reckless high speed vehicle pursuit and was approaching Glendale Avenue – now traveling at **90 M.P.H.** As the two vehicles approached West Hampton Avenue on North Sherman Boulevard, both vehicles flew through the intersection in excess of **50 M.P.H.**, narrowly avoiding collisions with cross-traffic.

22. That at 18:08:01, the squad car approached 4942 North Sherman Boulevard and encountered a sign clearly stating: "**SCHOOL SPEED LIMIT 20 MPH**" but within 2 seconds at 18:08:03 **DURAND** and **MARTIN** had accelerated to a speed of **81 M.P.H.** as they approached West Fairmount Street. That such behavior rises to the level of criminally and recklessly endangering the safety of others including these plaintiffs.

23. At 18:08:11, now traveling **93 M.P.H.**, **DURAND** and **MARTIN** sped past the Barack Obama School of Career and Technical Education at 5075 North Sherman Boulevard *on a school night when school was in session*.

24. **ALEXANDER**, aware that the squad car was still in pursuit, eventually turned eastbound onto the Silver Spring Drive exit ramp (at 18:08:38), then turned southbound onto North Hopkins Street, still under hot pursuit for an alleged *municipal traffic violation* and not suspected of having committed any crime – misdemeanor or felony. The squad car operated by **DURAND** and navigated by **MARTIN** then attempted to turn left onto West Sheridan Street

from North Hopkins Street where at 4229 West Sheridan Avenue **DURAND** who in the ultimate display of lack of concern for himself, his partner MARTIN and the public large, completely lost control of the squad car crashing it into a parked vehicle, thereby terminating the pursuit (18:09:00) 2 minutes and 23 seconds after the "chase" began.

25. The "bullet fired into the crowd" had by this point of course already been fired and predictably within seconds of the squad car collision with a parked vehicle, hit its inevitable victims, the Cooper/Thomas family. The automobile operated by a frightened **ALEXANDER**, fleeing a needlessly reckless and dangerous high speed vehicle pursuit in violation of the purported "training" received by **DURAND** and **MARTIN**, continued eastbound on West Sheridan Avenue, blew through the stop sign at 37th Street, and crashed into the vehicle driven by Teion Yasin Cooper, killing him and injuring his daughter **M. T.** and her mother, **BARBARA**.[1]

26. **ALEXANDER** was prosecuted in Milwaukee County Circuit Court case 22CF003599, <u>State of Wisconsin v. Javon L. Alexander</u>. The complaint alleged Second Degree Reckless Homicide, Hit and Run – Resulting in Death, Hit and Run – Great Bodily Harm, and Hit and Run – Injury. **ALEXANDER** pled guilty to one count each of (a) Hit and Run-Involve Death, a class D felony, Wisconsin Statutes 346.67(1); (b) Hit and Run-Involve Great Bodily Harm, a class E felony, Wisconsin Statutes 346.67(1); and (c) Hit and Run-Involve Injury, an unclassified felony, Wisconsin Statutes 346.67(1).

---

[1] The entire dash cam video was posted online and is available at: https://x-default-stgec.uplynk.com/ausw/slices/a55/44c3f81cadf84cf5a6f4e6d100388208/a5509f616655471a95a60a4cd18f7889/a5509f616655471a95a60a4cd18f7889_e.mp4 (last accessed April 15, 2025).

27. On April 12, 2024, **ALEXANDER** was sentenced to 20 years with 0 days credit concurrent to Counts 3 and 4 and Consecutive to any other sentence; the Initial Term of Confinement in the Wisconsin State Prison System was 12 years; the maximum term of extended supervision was 8 years. A <u>Judgment of Conviction</u> was entered on April 23, 2024.

28. That police officers including deputy sheriffs involved in a high speed pursuit like the one the individual Defendants were conducting are aware that the high-speed pursuit of a target vehicle which is consistently violating traffic signals and speed restrictions, through busy city streets, poses a significant danger to innocent motorists and pedestrians along the route of the pursuit, and the individual Defendants pursuing **ALEXANDER** were aware of this danger.

29. Police officers involved in a high speed chase like the one the individual Defendants were conducting have various ways available to them to terminate the pursuit and the ongoing danger to innocent motorists and pedestrians. One way police can terminate a high speed pursuit is through the use of force. Almost any degree of force is lawful when police are seeking to terminate a high-speed pursuit of a vehicle that is creating an ongoing danger to innocent motorists and pedestrians. <u>Scott v. Harris</u>, 550 U.S. 372 (2007).

30. Another way police can terminate a high speed pursuit is through simply discontinuing the pursuit and permitting the pursued vehicle to escape. There are good reasons not to permit the escape of ***dangerous criminals***, but it is often preferable to simply abstain from prolonging the danger to innocent motorists and pedestrians that occurs if a pursuit is not terminated in some fashion.

31. Of course, there is a third option for police involved in a high-speed pursuit, and that is to simply continue following the pursued vehicle until it crashes, without either

terminating the pursuit by discontinuing it or terminating the pursuit by applying physical force to the pursued vehicle. This third option is the most dangerous to innocent motorists and pedestrians as it can result in extended high-speed pursuits that expand the danger to innocent motorists and pedestrians over significant expanses of time and space. This third option creates so much danger to innocent motorists and pedestrians and achieves so little toward any legitimate goal of law enforcement that choosing it reflects an intentional disregard for the safety of innocent motorists and pedestrians on the part of the pursuing officers.

32. **The County**, on its part, purports to properly train deputy sheriffs and developed written policies on high speed vehicle pursuits which it routinely publishes and uses as training materials. However, upon information and belief, and the historical records relating to high speed chases involving deputy sheriffs of the Milwaukee County Sheriff's Department, there is no emphasis on the rules to be followed, no discipline imposed for failure to follow the high speed vehicle pursuit guidelines, and **the County** regularly turns a blind eye to even the most flagrant of violations, as here, thereby implicitly encouraging and failing to discourage such unlawful and inherently dangerous activities.

33. Throughout the pursuit, in an effort to elude the pursuing officers, **ALEXANDER** proceeded recklessly, at illegal and unsafe speeds, ignoring stop signs and traffic lights, and otherwise disregarding the rules of the road, facts all directly witnessed by **DURAND** and **MARTIN** who ignored every aspect of their purported "training" and did not disengage the pursuit, knowing full well that no discipline for such a flagrant disregard of Milwaukee County policies would be forthcoming and emboldened by that fact to engage in reckless life-threatening behaviors as happened here.

9

34. The Milwaukee County Sheriff's Office published an updated **Policy Manual** on January 15, 2022, whose terms were in effect on the date of the instant incident. It states at relevant part:

Vehicle Pursuits

307.1 PURPOSE AND SCOPE

Vehicle pursuits expose innocent citizens, law enforcement officers and fleeing violators to the risk of serious injury or death. The primary purpose of this policy is to provide deputies with guidance in **balancing the safety of the public** and themselves against law enforcement's duty to apprehend violators of the law (Wis. Stat. § 346.03(6); Wis. Admin. Code § LES 3.07).

Another purpose of this policy is to **minimize the potential for pursuit-related crashes.** Vehicle pursuits require deputies to exhibit a high degree of common sense and sound judgment. Deputies must not forget that **the immediate apprehension of a suspect is generally not more important than the safety of the public and pursuing deputies.**

The following factors individually and collectively shall be considered in deciding whether to initiate or continue a pursuit (Wis. Stat. § 346.03(6)):

(a) The seriousness of the known or reasonably suspected offense and its relationship to community safety. Absent reasonable suspicion to the contrary; fleeing offenders should be treated as a **traffic violator only**.

(b) The **importance of protecting the public** and balancing the known or reasonably suspected offense and the apparent need for immediate capture against the risks to deputies, innocent motorists and others.

(c) The apparent nature of the fleeing suspect (e.g**., whether the suspect represents a serious threat to public safety**).

(d) The identity of the suspect has been verified and there is comparatively minimal risk in allowing the suspect to be apprehended at a later time.

(e) **The safety of the public in the area of the pursuit, including the type of area, time of day, the amount of vehicular and pedestrian traffic (e.g., school zones) and the speed of the pursuit relative to these factors**.

(f) The pursuing deputy's familiarity with the area of the pursuit, the quality of communication between the pursuing units and the dispatcher/supervisor, and the **driving capabilities of the pursuing deputies** under the conditions of the pursuit.

(g) The weather, traffic and road conditions that unreasonably increase the danger of the pursuit when weighed against the risks resulting from the suspect's escape.

(h) The performance capabilities of the vehicles used in the pursuit in relation to the speed and other conditions of the pursuit.

(i) **Vehicle speeds.**

(j) Other persons in or on the pursued vehicle (e.g., passengers, co-offenders and hostages).

(k) The availability of other resources.

(l) The sheriff's unit is carrying passengers other than on-duty sheriff's deputies (*emphases* added throughout).

35. That as is plainly evident from even a cursory review of the dash cam video of the incident, **DURAND** and **MARTIN** failed to follow **the County**'s policies in *virtually every aspect* of their determination to *commence* and *continue* this high speed vehicle chase.

36. **DURAND** and **MARTIN** did not **balance the safety of the public** and themselves against law enforcement's duty to apprehend violators of the law, given the high risks to the public and fact that this party eluding the police was merely a minor traffic violator.

37. **DURAND** and **MARTIN** did not consider the obvious fact that the immediate apprehension of a suspect – even a suspected misdemeanant or felon (which **ALEXANDER** was not) – is generally not more important than the safety of the public and pursuing deputies.

38. **DURAND** and **MARTIN** did not consider the seriousness of the known or reasonably suspected offense and its relationship to community safety. Absent reasonable suspicion to the contrary, fleeing offenders should be treated as a **traffic violators only.** Instead,

11

Case 2:25-cv-00530-WCG     Filed 04/11/25     Page 11 of 17     Document 1

**DURAND** and **MARTIN** treated **ALEXANDER** as if he had just committed a homicide in their presence and that there was an immediate harm to the public necessitating the use of *any means necessary* to take him into custody.

39. **DURAND** and **MARTIN** completely ignored the very obvious need for the **safety of the public in the area of the pursuit, including the type of area, time of day, the amount of vehicular and pedestrian traffic (e.g., school zones) and the speed of the pursuit relative to these factors**. Literally, this was a divided highway, one of Milwaukee's main arterials, it was the evening of a school night, there was both vehicular and pedestrian traffic everywhere, they sped at excessive speeds past churches and through 20 M.P.H. school zones, and the speeds reached more than 90 miles per hour. It is very nearly impossible to have violated more of the high speed vehicle pursuit policies than **DURAND** and **MARTIN** did in this less-than-three-minute fatal high speed pursuit.

40. It is self-evident that **DURAND** has a limited ability to maintain control of his squad car as he failed to negotiate a simple left hand turn at 31 miles per hour resulting in a crash of his service vehicle into a legally parked car. The **driving capabilities of the pursuing deputies** under the conditions of the pursuit suggest that this pursuit never ought to have been started in the first place, and certainly should have been discontinued when **ALEXANDER** sped off through a residential school zone and past an open high school on a Tuesday night when school was in session. **MARTIN**'s abject failure to even *attempt* to dissuade his partner from starting – and worse, continuing – the pursuit makes him entirely complicit and culpable in the inevitable outcome that occurred.

41. That there is no evidence whatsoever that Teion Yasin Cooper was in any was contributorily negligent in causing the collision that resulted in his own death, the responsibility therefore resting solely with the officers who foolishly decided to "fire the bullet" by conducting a high speed vehicle pursuit involving a traffic infraction in a densely populated residential area that included churches and schools on its route, and the "bullet" himself, **ALEXANDER**.

42. That the "bullet fired into the crowd" by **DURAND** and **MARTIN** inevitably found its mark and took the life of Teion Yasin Cooper. That the actions of **DURAND** and **MARTIN** proximately caused the injuries and death of Teion Yasin Cooper and injuries to his daughter **M. T**. and **M. T.**'s mother **BARBARA**. That the hereinabove described actions of **DURAND** and **MARTIN** shock the conscience in that they acted with deliberate indifference and/or reckless disregard of the rights of Teion Yasin Cooper, his daughter, and her mother. That while plaintiffs believe that while **ALEXANDER** received an appropriate sentence for his criminal conduct, plaintiffs assert that while he was the metaphorical "bullet" that slammed into Teion Yasin Cooper, his daughter, and her mother, the ones who fired the metaphorical "gun" were **DURAND** and **MARTIN**, empowered and inspired by the lack of active proper training and enforcement by **the County** of its own published rules; that the firing of the "gun" proximately caused ended Teion's life and injured his daughter and her mother.

### BASES OF LIABILITY: SUBSTANTIVE DUE PROCESS, NEGLIGENCE, WIS. STATS. §895.46, MUNICIPAL LIABILITY FOR "CUSTOM" OR "POLICY"

43. That **DURAND** and **MARTIN** conducted themselves "so recklessly that a trier of fact would be entitled to find subjective knowledge of an unjustifiable risk to human life and conscious disregard of that risk." Flores v. City of S. Bend, 997 F.3d 725, 729-730 (7th Cir.

2021). In so doing they violated rights secured to Teion Yasin Cooper and his family by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

44. Further, that **DURAND** and **MARTIN** acted with "criminal recklessness—which is the same as deliberate indifference." <u>Hill v. Shobe</u>, 93 F.3d 418, 421 (7th Cir. 1996) (quoting <u>Archie v. City of Racine</u>, 847 F.2d 1211, 1222 (7th Cir. 1988)); see also <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 839 (1998) ("deliberate indifference" or "reckless disregard"). Criminal recklessness in this context has long served as an effective proxy for intent, <u>Hill</u>, 93 F.3d at 421 (citing <u>Wilson v. Williams</u>, 83 F.3d 870, 875 (7th Cir. 1996)). That **DURAND** and **MARTIN** had actual knowledge of impending harm which they consciously refused to prevent." *See*, <u>Hill,</u> 93 F.3d at 421.

45. That **DURAND** and **MARTIN** committed the common-law tort of negligent injury when they drove in such a way that they had zero probability of ending their high-speed pursuit of **ALEXANDER** in any way other than causing a vehicular crash. <u>Legue v. City of Racine</u>, 2014 WI 92, ¶ 143, 357 Wis. 2d 250, 301, 849 N.W.2d 837, 861–62.

46. That Wis. Stats. §895.46 (1)(a) states that: "If the defendant in any action or special proceeding is a public officer or employee and is proceeded against in an official capacity or is proceeded against as an individual because of acts committed while carrying out duties as an officer or employee and the jury or the court finds that the defendant was acting within the scope of employment, the judgment as to damages and costs entered against the officer or employee … shall be paid by the state or political subdivision of which the defendant is an officer or employee." That **DURAND** and **MARTIN** are employees and public officers who

acted in their official capacities and within the scope of their employment with **the County** while carrying out their duties as officers.

47. That officers such as **DURAND** and **MARTIN** – who were not responding to an emergency – acted so recklessly that they had subjective knowledge of an unjustifiable risk to human life and consciously disregarded that risk, proximately causing the death of Teion Yasin Cooper and injuries to **BARBARA** and **M. T.**.

48. Defendants **DURAND** and **MARTIN** thus violated the substantive due process rights of Teion Yasin Cooper to be free from state actions that deprive him of life, in such a manner as to shock the conscience.

49. The actions of **DURAND** and **MARTIN** and **the County** proximately caused Teion Yasin Cooper's death and injuries to **BARBARA** and **M. T.**, and caused each of them to suffer physically and emotionally for which his estate and **BARBARA** and **M. T.** seek an award of compensatory damages in an amount deemed just by the Court.

50. That in particular the failure of **the County** to properly train, discipline and supervise their deputy sheriffs regarding high speed residential area vehicle pursuits was a proximate cause of the acts that resulted in the injuries sustained by the plaintiffs, including Teion's death.

51. The actions of **DURAND** and **MARTIN** and **the County** caused the **Estate** and **BARBARA** to incur funeral expenses and other expenses for which they seek awards of compensatory damages in amounts deemed just by the Court.

52. As a further direct and proximate result of the acts, errors and omissions of **DURAND** and **MARTIN** and **the County**, Plaintiffs have suffered damages as a result of the

15

Case 2:25-cv-00530-WCG    Filed 04/11/25    Page 15 of 17    Document 1

violation of state and federal constitutional rights and incurred and will continue to incur attorneys' fees for which they seek compensation.

53. Because the unlawful acts of **DURAND** and **MARTIN** and **the County** herein alleged were carried out with reckless disregard for Teion Yasin Cooper's and Barbara and **M. T.**'s fundamental rights, the Plaintiffs seek awards of punitive damages against the individual Defendants to deter them and others similarly situated from similar wrongful acts in the future.

54. All conditions precedent to this action within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

**WHEREFORE**, the plaintiffs demand judgment against **THOMAS DURAND, LEON MARTIN,** and **MILWAUKEE COUNTY** as follows:

a. Plaintiffs demand judgment against **THOMAS DURAND, LEON MARTIN,** and **MILWAUKEE COUNTY** for a fair and reasonable amount of compensatory damages found to be appropriate;

c. Plaintiffs demand judgment against **THOMAS DURAND, LEON MARTIN,** and **MILWAUKEE COUNTY** based upon their liability for related debts occasioned by the injuries sustained by and death of Teion;

d. Plaintiffs demand judgment against **THOMAS DURAND, LEON MARTIN,** and **MILWAUKEE COUNTY** for punitive damages as same may be available under Wisconsin law; and

e. The Plaintiffs further demand judgment against **THOMAS DURAND, LEON MARTIN,** and **MILWAUKEE COUNTY** for the costs, disbursements and prejudgment interest in this action and for such other relief as the Court deems appropriate.

f. Plaintiffs further demand, in the event of settlement or verdict in favor of the plaintiffs, the Court to grant an order declaring Plaintiffs' rights to such settlement or verdict proceeds to be paramount to that of any subrogated party.

g. Finally, in the event of any subrogated party's failure to respond to this <u>Complaint</u> in a timely manner, Plaintiffs request this court to grant an order dismissing the subrogated party from this action and barring any claim for subrogation and/or reimbursement and barring the subrogated party from participating in any judgment or settlement in this action.

**PLEASE TAKE NOTICE THAT THE PLAINTIFFS DEMAND THAT
THE ABOVE-ENTITLED ACTION BE TRIED BY A TWELVE-PERSON JURY.**

Dated at Milwaukee, Wisconsin this 11th day of April, 2025.

Electronically signed by
/s/Julius Andriusis
Wisconsin State Bar #1053784

Andriusis Law Firm, LLC
985 West Oklahoma Avenue
Milwaukee, WI 53215
Telephone: (414) 831-7929
Fax: (414) 645-5512
andriusis@andriusislaw.com