UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ESTATE OF TEION YASIN COOPER,
by Special Administrator Julius Andriusis, et al.,

        Plaintiffs,

        v.                        Case No. 25-C-530

MILWAUKEE COUNTY, et al.,

        Defendants.

---

**DECISION AND ORDER GRANTING DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

---

    This case arises from a motor vehicle collision that occurred during the course of a high-speed police chase in Milwaukee, Wisconsin. When two Milwaukee County Sheriff Deputies attempted to stop a vehicle taking flight after committing a traffic violation, the driver of the fleeing vehicle collided with a vehicle operated by Teion Yasin Cooper and occupied by his minor daughter, M.T., and his daughter's mother, Barbara Sharee Thomas. The crash resulted in Cooper's death and injuries to M.T. and Thomas.

    The Estate of Teion Yasin Cooper, M.T., and Thomas brought this action seeking monetary damages against Milwaukee County and the sheriff deputies involved, Leon Martin and Thomas Durand (the Deputies). The complaint asserts four claims: (1) a Fourteenth Amendment due process claim against the Deputies under 42 U.S.C. § 1983; (2) a similar claim against the County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); (3) a negligence claim against the Deputies under state law; and (4) an indemnification claim under state law. The court has jurisdiction over Plaintiffs' § 1983 claims under 28 U.S.C. § 1331 and supplemental jurisdiction

over the state law claims pursuant to 28 U.S.C. § 1367. This case is before the court on Defendants' motion for judgment on the pleadings. For the following reasons, Defendants' motion will be granted and the case will be dismissed.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017) (citing *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court must draw all reasonable inferences and view all facts in the light most favorable to the plaintiff. *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017). The court is not, however, "obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002). To survive a motion for judgment on the pleadings, the complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ALLEGATIONS CONTAINED IN THE COMPLAINT

On Tuesday, May 24, 2022, at 6:06 p.m., Milwaukee County Sheriff Deputies Durand and Martin were on duty in a squad car driven by Deputy Durand. The Deputies were traveling southbound on North Sherman Boulevard in Milwaukee County. Upon approaching the intersection of North Sherman Boulevard and West Hope Avenue, the Deputies spotted a white

Infiniti owned and operated by Javon Alexander heading northbound on North Sherman Boulevard toward the same intersection. The Deputies observed Alexander move into the far right "distress" lane as he approached the intersection. When the light turned green, instead of turning right as expected, Alexander proceeded straight through the intersection and merged into traffic.

Deputy Durand decided to initiate a traffic stop. He made a U-turn, activated his emergency lights, and pursued the white Infiniti. Having noticed the squad car with emergency lights pursing him, Alexander accelerated his car in an attempt to flee the Deputies. The Deputies then engaged in a high-speed pursuit of the vehicle.

The high-speed pursuit proceeded northbound on North Sherman Boulevard, eastbound on Silver Spring Drive, southbound on North Hopkins Street, and finally eastbound on West Sheridan Avenue. Plaintiffs contend that the pursuit occurred in a densely populated residential area during the evening rush hour of a school night. During the pursuit, the two vehicles drove through an intersection in excess of 50 m.p.h., narrowly avoiding collisions with cross-traffic. When the Deputies passed signs stating, "school speed limit 20 mph," the Deputies' vehicle accelerated to a speed of 81 m.p.h. The Deputies also sped past a church, traveling 86 m.p.h., as well as the Barack Obama School of Career and Technical Education on a night when school was in session at a speed of 93 m.p.h. In his effort to evade the Deputies, Alexander reached speeds approaching or exceeding 100 m.p.h.

As Deputy Durand attempted to turn left onto West Sheridan Avenue, he lost control of the squad car and crashed into a parked vehicle, thereby terminating the pursuit 2 minutes and 23 seconds after it began. Even though the pursuit had effectively been terminated, Alexander continued to travel at high speeds down West Sheridan Avenue. Alexander drove through a stop

3

Case 2:25-cv-00530-WCG     Filed 08/15/25     Page 3 of 10     Document 24

sign at the intersection of West Sheridan Avenue and 37th Street and crashed into the vehicle driven by Cooper. The crash resulted in Cooper's death and injuries to M.T. and Thomas.

Alexander was prosecuted in Milwaukee County Circuit Court Case No. 22CF003599, *State of Wisconsin v. Javon L. Alexander*. He pled guilty to one count of hit and run involving death, one count of hit and run involving great bodily harm, and one count of hit and run involving injury. On April 12, 2024, Alexander was sentenced to a total of 12 years of initial confinement and eight years of extended supervision.

Plaintiffs allege that the Deputies violated Plaintiffs' substantive due process rights, secured by the Fourteenth Amendment to the United States Constitution, and Milwaukee County policy by initiating and continuing to pursue Alexander based solely on a traffic violation. They assert that the Deputies failed to balance the safety of the public with the need to apprehend Alexander. Plaintiffs contend that Deputy Durand lacked the driving skills necessary to safely engage in the pursuit and that, by failing to attempt to dissuade Deputy Durand from starting or continuing the pursuit, Deputy Martin is complicit and culpable in the outcome. In addition, Plaintiffs allege that Milwaukee County failed to properly train, discipline, and supervise its sheriff deputies regarding high-speed residential area vehicle pursuits. Finally, Plaintiffs allege that the Deputies were negligent and that the County is required to indemnify them for such liability under Wis. Stat. § 895.46.

## ANALYSIS

**A. Fourteenth Amendment Due Process Claim against the Deputies**

Plaintiffs assert that the Deputies deprived them of their substantive rights under the Due Process Clause of the Fourteenth Amendment. Specifically, Plaintiffs allege that the Deputies acted with "deliberate indifference" and "conducted themselves so recklessly that a trier of fact

4

would be entitled to find subjective knowledge of an unjustifiable risk to human life and conscious disregard of that risk." Compl. ¶¶ 43–44, Dkt. No. 1 (internal quotation marks and citation omitted). This case is controlled by *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court in *Lewis* explained that "[t]he touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." 523 U.S. at 845–46 (internal quotation marks and citations omitted). In that case, the Court considered whether police officers had violated the constitutional guarantee of substantive due process by causing a person's death during a high-speed chase. The Court held that an officer violates the substantive component of the Due Process Clause when his conduct "can be properly characterized as arbitrary, or conscious shocking, in a constitutional sense." *See id.* at 847 (internal quotation marks and citation omitted).

The Court noted that an officer does not violate "the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender." *Id.* at 836. Instead, "in such circumstances," the Court explained, "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscious, necessary for a due process violation." *Id.* Stated differently, conscience-shocking behavior is likely to be found where the "conduct intended to injure [is] in some way unjustifiable by any government interest." *Id.* at 849. Following the Supreme Court's instruction, the Seventh Circuit has held that "even a minor traffic stop, and pursuit of a fleeing suspect after an unexplained flight

5

from that stop, is a legitimate government interest." *Steen v. Myers*, 486 F.3d 1017, 1023 (7th Cir. 2007) (cleaned up).

The allegations in Plaintiffs' complaint do not plausibly support an inference that the Deputies' conduct shocks the conscience. The complaint contains no allegations that the Deputies intended to cause Plaintiffs harm. Plaintiffs allege that the Deputies engaged in unprofessional and irresponsible behavior by continuing an unwarranted and reckless high speed vehicle pursuit through a densely populated residential area during the evening rush hour of a school night. Compl. ¶¶ 21–23, 25, 41–42. They assert that the Deputies completely ignored the very obvious need for the safety of the public in the area of the pursuit. *Id.* ¶ 39. While these facts may support a finding of negligence or recklessness, Plaintiff's allegations do not rise to the level of conscience shocking or intentional conduct. In addition, the Deputies had a legitimate government interest in pursuing a fleeing Alexander. The fact that Alexander committed a municipal traffic violation does not mean that the Deputies were required to "overlook such transgressions when a suspect flees rather than stops his vehicle in response to flashing lights in the rearview mirror." *Winston v. City of Chicago*, 130 F. Supp. 3d 1218, 1224 (N.D. Ill. 2015).

"[H]igh-speed chases with no intent to harm suspects physically or worsen their legal plight do not give rise to liability under the Fourteenth Amendment." *Lewis*, 523 U.S. at 854. Because Plaintiffs have failed to plead facts to give rise to a plausible inference that the Deputies intended to cause harm or that their conduct shocks the conscience, the Deputies cannot be held liable under the Fourteenth Amendment. Therefore, Plaintiffs' Fourteenth Amendment claim must be dismissed.

6

Case 2:25-cv-00530-WCG    Filed 08/15/25    Page 6 of 10    Document 24

## B. Qualified Immunity

The Deputies argue in the alternative that they are entitled to qualified immunity. Although the court has concluded that the Deputies did not violate Plaintiffs' Fourteenth Amendment rights, for completeness, it will address this argument as well.

Under the doctrine of qualified immunity, government officials performing discretionary functions are immune from civil liability for constitutional violations "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (quoting *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (per curiam)). In short, the doctrine "protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting another source).

The doctrine reflects an accommodation between the public interest in safeguarding constitutional guarantees on the one hand and, on the other, the concern that subjecting government officials to personal liability and harassing litigation would inhibit them in the performance of their duties. *Kisela*, 584 U.S. at 104. Moreover, as applied to law enforcement officers, the doctrine takes into consideration a unique feature of their job: officers are frequently required "to make split-second decisions in life-or-death situations." *Horton v. Pobjecky*, 883 F.3d 941, 950 (7th Cir. 2018). Thus, qualified immunity shields those officers who make reasonable, yet ultimately mistaken, decisions in the rapidly evolving, and often tense, line of duty.

Although qualified immunity is an available affirmative defense to defendants in a § 1983 suit, the plaintiff has the burden to overcome the defense. *Spiegel v. Cortese*, 196 F.3d 717, 723

(7th Cir. 1999). Qualified immunity requires the plaintiff to show "(1) conduct violating the plaintiff's constitutional or statutory rights that is (2) clearly established at the time of the violation such that a reasonable official would understand that what he is doing violates that right." *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013) (internal quotation marks omitted). While a plaintiff is not required to present a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). In recent years, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 & n.3 (2015) (quotation marks omitted). The Court has instructed: "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate." *Id.* (internal quotation marks and citation omitted).

Here, the court must determine whether a constitutional rule applies with obvious clarity such that it placed the Deputies on notice that their conduct was unlawful. It must "examine Supreme Court precedent and precedent from [the Seventh Circuit] to determine whether a right was clearly established at the time of the violation." *Mason-Funk v. City of Neenah*, 895 F.3d 504, 508–09 (7th Cir. 2018) (citation omitted). Plaintiffs have not identified, and the court has not found, a controlling case or robust collection of persuasive authority analogous to the facts presented here that clearly establishes that the Deputies' conduct violated Plaintiffs' constitutional rights. Instead, Plaintiffs rely on the Deputies' alleged violations of Milwaukee County policy to establish that the constitutional right at issue was clearly established. But a violation of a county policy is not a violation of the Constitution. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir.

8

2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). Plaintiffs have not presented cases that put the constitutional questions in this case beyond debate. Accordingly, the Deputies are entitled to qualified immunity on Plaintiffs' claim.

## C. *Monell* Claim

Plaintiffs assert a claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), alleging that Milwaukee County failed to properly train, discipline, and supervise its deputy sheriffs regarding high-speed residential area vehicle pursuits. A county "cannot be liable under *Monell* when there is no underlying constitutional violation." *See Gonzalez v. McHenry County, Illinois*, 40 F.4th 824, 830 (7th Cir. 2022) (citing *Sallenger v. City of Springfield, Illinois*, 630 F.3d 499, 504 (7th Cir. 2010)); *see also Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998) ("A failure to train theory or failure to institute a municipal policy theory requires a finding that the individual officers are liable on the underlying substantive claim."). Because the Deputies did not violate Plaintiffs' constitutional rights, Plaintiffs' *Monell* claim against the County must be dismissed.

## D. State Law Claims

Plaintiffs have alleged that the Deputies were negligent and that the County is required to indemnify them for such liability under Wis. Stat. § 895.46. Generally, when federal claims drop out of a case, federal courts decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3); *see Carlsbad Tech. Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). The Seventh Circuit has described a "sensible presumption that if the federal claims drop out *before trial*, the district court should

9

relinquish jurisdiction over the state-law claims." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). The court follows this presumption and declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. Accordingly, Plaintiffs' state law claims against the defendants are dismissed without prejudice so that they may be pursued in a state forum.

## CONCLUSION

For the reasons set forth above, Defendants' motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED** with respect to the federal claims, and such claims are dismissed. The remaining state law claims are dismissed without prejudice. The case is dismissed. The clerk is directed to enter judgment forthwith.

**SO ORDERED** at Green Bay, Wisconsin this 15th day of August, 2025.

_____
William C. Griesbach
United States District Judge

10

Case 2:25-cv-00530-WCG   Filed 08/15/25   Page 10 of 10   Document 24